## CHARLES HENDRICK *v.* DANIEL CROWLEY.

31  471
131  383

31  471
137  297

RESOLUTION TO GRADE STREET IN SAN FRANCISCO.—Since the amendment of the Consolidation Act, approved April 25th, 1862, it has not been necessary for the Mayor of the City and County of San Francisco to sign a resolution of the Board of Supervisors declaratory of their intention to improve a public street, in order to render it valid.

WHEN ASSIGNEE MAY SUE ASSIGNOR.—If A. owns a lot on a street to be improved, and takes the contract, and then assigns to B., who performs the contract, B. may sue A. for the assessment against his lot.

IN WHAT RIGHT STREET CONTRACTOR SUES.—In suing a lot owner for a street assessment the contractor is *quasi* assignee or agent of the city, and is vested with all her rights.

PAROL EVIDENCE TO VARY WRITTEN INSTRUMENT.—The admission of parol evidence to show that the true consideration is other than that expressed, is an

exception to the rule that the legal effect of a written instrument cannot be varied
or defeated in whole or in part by parol evidence.

WHEN PAROL TESTIMONY AS TO CONSIDERATION OF WRITTEN INSTRUMENT CANNOT
BE ADMITTED.—The consideration of a written instrument cannot be contradicted
or shown to be different by parol testimony, when thereby the legal effect of the
instrument to pass the entire interest, according to the purpose therein designated,
would be defeated.

APPEAL from the District Court, Fourth Judicial District,
City and County of San Francisco.

On the first day of February, 1864, the Board of Supervisors of the City and County of San Francisco passed a resolution, declaring the intention of the Board to grade Washington street, between Jones and Leavenworth. The resolution was not signed by the Mayor. Defendant Crowley made proposals for the contract, and it was awarded to him, and the Superintendent of Public Streets entered into a contract with him to perform the same. Crowley assigned the contract to plaintiff Hendrick, who performed the work. Crowley was the owner of a lot fronting on the street graded, on which the Superintendent of Public Streets assessed the sum of five hundred and fifteen dollars and forty-one cents, for its proportion of the sum due on the contract. The action was brought to recover this sum. Plaintiff appealed from an order granting a new trial.

The other facts are stated in the opinion of the Court.

*Collins & Clements*, for Appellant, argued that parol evidence to show that the consideration of the assignment was, that the assignee should not collect Crowley's assessment, would tend to show that Hendrick did not acquire a right to the whole of the contract, and would contradict the express words of the assignment, and that Crowley was estopped by his written assignment from doing this; and cited *Coles* v. *Soulsby*, 21 Cal. 49; *McCrea* v. *Perneant*, 16 Wend. 465; *Wilkinson* v. *Scott*, 17 Mass. 250; *Moore* v. *Shattuck*, 4 N. H. 232; and *Grant* v. *Townsend*, 2 Hill, 557.

By the Court, SANDERSON, J.:

Action for a street assessment. Plaintiff obtained judgment. Defendant obtained a new trial, and plaintiff appealed.

I. The ground for a new trial, first specified in the statement, is that the whole proceedings are void because the resolutions of the Board of Supervisors were not signed by the Mayor.

The proceedings were had under the Act of 1862, and we have repeatedly held that under that Act the resolutions of the Board of Supervisors in relation to street improvements need not be approved by the Mayor. They are valid without his approval. (*Cochran* v. *Collins*, 29 Cal. 131; *Taylor* v. *Palmer*, *ante*, 240.)

II. It appears from the complaint that the contract was let to the defendant and assigned by him to the plaintiff before the work was commenced; and the second ground upon which a new trial was asked was that the contract created no right of action in favor of the defendant against himself, and therefore the assignment transferred no such right to the plaintiff, or, in other words, the defendant could not have sued himself for the tax in question, and therefore his assignee, being in no better position and having no greater rights, cannot.

Regarding this action as upon the contract only, there is much seeming plausibility and force in the view suggested, but it cannot be so regarded. These street contracts are *sui generis*. They are but a part of the method devised by the Legislature for the purpose of accomplishing to a certain extent a double object—the improvement of streets in San Francisco and the levy and collection of a tax to pay for it. The whole proceeding is aside from the common law, and is of purely statutory origin. The contract for the work is but one feature or step in the system devised by the Legislature for the purpose of enforcing the power of taxation in certain cases. We had occasion to consider at length the nature of

these proceedings in *Emery* v. *The San Francisco Gas Co.*, 28 Cal. 345, and *Emery* v. *Bradford*, 29 Cal. 83, and it is not necessary to repeat what we said in those cases. The statute vests the City Government with power to improve its streets, and to raise a fund for that purpose by taxing the adjoining property. All else is mere mode and manner. For the purpose of relieving the City Government, so far as possible, from all risk and responsibility in the premises, a peculiar system or mode of procedure is devised. Ordinarily, in view of the triple relations existing between the contractor, the City Government and the taxpayer, following the analogies of the common law, the City Government and the contractor would be the only parties to the proceedings so far as they relate to the making of the improvements, and the City Government and the taxpayer the only parties to the proceedings so far as they relate to the collection of the tax. But, for the purpose already suggested, a different plan has been adopted. The City Government and the contractor are the only parties to the proceeding so far as making the improvement is concerned; that being done, the City Government acts alone in its political capacity in apportioning and levying the tax; but when provision is made for the collection of the tax the City Government steps out of the triangle, and the contractor is thrust into her place and made her agent for that purpose. Independent of the statute, the tax would be due from the taxpayer to the city, and the city would have to demand and sue for it if necessary; but the statute provides that the city shall not be responsible for the collection of the tax or subjected to the risk, trouble and annoyance, but shall virtually assign her right of action for the tax to the contractor in full payment for his work and labor under her contract with him, and authorize him to sue in his own name to recover it, if necessary. This being done, his relation of contractor is at an end. He has performed his contract to the satisfaction of the city, which is the other contracting party, and has got what he agreed to take for his work. If he sues he does not sue upon his contract with the city, but upon the draft, in

the shape of a warrant issued by the Superintendent of Streets, as agent of the city, given to him by the city, upon her tax-payers, who are indebted to her for the amount therein specified. The thing sued for is not the contract price or a part of it, but the tax specified in the assessment or warrant, for which he sues not as contractor or as assignee of somebody else who was the contractor, but as assignee of the city, and he is compelled to make the same averments and the same proof which the city would have had to make had she undertaken to collect the tax; in other words, he has to show that the entire proceedings which terminated in imposing upon the property holder a liability to pay the tax in suit have been in conformity with the provisions of the statute by which the tax was authorized. Without doing this the city could not have recovered under the more ordinary mode adopted in such cases, nor can he. Among other things, he must show that a contract was let according to law, and the work performed to the satisfaction of the city. Beyond this the contract has nothing to do with the case. It comes in as part of the evidence of indispensable conditions to the right of the city to levy the tax, but in no other sense does it constitute the cause of action or a part of it.

III. The consideration, and the only one expressed in the assignment, is one hundred dollars. In his answer the defendant avers that the true consideration was that he should not be required to pay his share of the tax, but should be released from all liability to pay the same. At the trial he offered to prove this allegation, but his testimony was rejected. This ruling constitutes the next and only remaining error which the defendant assigned on his motion for a new trial.

The appellant contends that there was no error in excluding the testimony, because it is within the rule which forbids the introduction of parol evidence to contradict, vary or explain a written instrument; and not within the exception which allows a consideration to be shown other and different from that expressed. In support of this it is argued that the direct legal effect of the proposed evidence is to defeat the assign-

ment in part by showing that there was a cotemporaneous parol agreement limiting the operation and effect of the assignment to a part only of the thing assigned. We think this view is sound.

The point as made by the respondent on his motion was certainly very ingenious, and, as suggested by counsel for appellant, was well calculated to mislead the Court. Stated in his language, the question at first blush would seem to fall readily within the exception and not within the rule, but upon further reflection it will appear clear that the reverse is the case.

There is no doubt but that parol evidence is admissible for the purpose of contradicting or showing that the true consideration is other and different from that expressed in the written instrument. But this is not a rule but an exception to the rule that the legal effect of a written instrument cannot be varied or defeated in whole or in part by parol evidence. The exception can never be allowed to override the rule, for that would be to dispense with the rule entirely and preserve only the exception. The exception always loses its governing force when it comes in conflict with the rule which it qualifies, and must yield to its higher claims. Hence the consideration cannot be contradicted or shown to be different from that expressed when thereby the legal operation of the instrument to pass the entire interest according to the purpose therein designated would be defeated. (*Cole* v. *Soulsby*, 21 Cal. 51 ; *Hihn* v. *Peck*, 30 Cal. 280.)

The order granting a new trial is reversed and the cause remanded.