[Civ. No. 6064. Third Appellate District.—April 22, 1938.]

ELIZABETH MULHOLLAND, Respondent, v. HATTIE PARKER, Appellant.

Shaw, Bailey & Poe and Chas. D. Shaw for Appellant.

F. G. Smith for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment decreeing a trust in certain real property and directing conveyance thereof to be made to certain beneficiaries. From this judgment the defendant appeals.

The transcript shows that one Charles L. Mulholland (now deceased), and the plaintiff in this action were married sometime previously to, and on the 1st day of August, 1904, were husband and wife, living in Los Angeles County; that there were four children, the issue of said marriage; that marital difficulties arose which resulted in the preparation, execution

and delivery of a property settlement agreement and the execution of certain deeds of conveyance in accordance with the terms of the agreement. The agreement provided that the parties thereto should live separate and apart; also, provisions were made for their mutual maintenance, and also for the support and care of the children.

In accordance with the terms of the agreement Charles L. Mulholland deeded to the plaintiff certain real property, also certain personal property, and agreed to pay to, and did thereafter pay to the plaintiff the sum of $1400. The terms of the agreement provided, and in accordance therewith Charles L. Mulholland deeded to the four children, certain real property, reserving to himself a life estate therein; likewise, in accordance with the terms of the agreement the plaintiff in this action conveyed a portion of the property deeded to her under the agreement to the four children heretofore referred to, reserving a life interest to herself therein, that is to say, each of the parties to the agreement deeded a portion of the property which they had received to the four children, reserving a life estate therein, leaving to each of the parties a portion of the property described in the agreement in the names of the respective parties, free from any of the conveyances or stipulations contained therein, as the separate property of the respective parties to the agreement.

On the 24th day of October, 1935, Charles L. Mulholland died, leaving a last will and testament, dated October 22, 1935. By the terms of this will a certain house and lot situate in the city of El Monte, county of Los Angeles, state of California, known as 337 Lexington Avenue, and particularly described as lot 46 of tract 77, also a number of shares of the capital stock of the Consumers' Salt Company and a one-fourth of the royalties from a certain existing oil and gas lease on the 20-acre tract of land described in the will, also, a 1933 Plymouth sedan automobile, were devised to the defendant. All the rest and residue of his estate was devised to the three surviving children, the issue of the marriage of said Charles L. Mulholland and his wife, Elizabeth Mulholland, one of said children having preceded Charles L. Mulholland in death. This will was duly admitted to probate. It may be here stated that the house and lot in the city of El Monte, mentioned in the will, is not mentioned in the agreement of separation executed by Charles L. Mulhol-

land and Elizabeth Mulholland on August 1, 1904, nor is any of the other property.

The action by the plaintiff is to impress a trust on the property just mentioned as having been willed to the defendant, Hattie Parker, and to compel a conveyance thereof to the three surviving children referred to herein. The testimony as to the alleged trust upon which this action is based is as follows:

"Q. Now, at that time you signed this document, who were present? A. Mr. Gage and Mr. Foley. Q. Your ·husband and yourself? A. My husband and myself. Q. Now, just previous to the time you signed that particular document, what conversation was had, what was said between your husband and yourself? A. I said, 'You get too much and I get too little'. He said, 'If you will sign this I will will everything I have got to our children'."

It will be noted that if a trust to convey property by will was established by the language above quoted, it referred only to property which Charles L. Mulholland owned or possessed at the time of the execution of the agreement. The language is, "everything I have got", not what he might possess at the date of his death.

Thereafter the agreement was signed and deeds executed by the respective parties making the conveyances to which we have heretofore referred.

The testimony to which we have referred was all admitted over the objection of the defendant, the admission of which is assigned as error on the ground that it tends to vary the terms of the agreement between the parties reduced to writing and thereafter signed.

It is further urged that such oral statement, if made, was not collateral to, nor disassociated with the subject matter of the agreement. The contentions of the appellant appear to us to· be well taken. In the first place our attention has not been called to any testimony in the record showing when the property willed to the defendant was acquired by Charles L. Mulholland. This of course is a fatal defect, in that the testimony does not show any declaration on the part of Charles L. Mulholland which would justify the conclusion that there was any intent on his part that such property should be impressed with a trust.

We come now to a consideration of whether the testimony alleged to create a trust was admissible in evidence under the provisions of section 1856 of the Code of Civil

Procedure. That section provides that when the terms of an agreement have been reduced to writing, it is to be considered as containing all of the terms, and therefore, as between the parties and their representatives, no evidence of the terms of the agreement, other than the contents of the writing, is admissible, except in the following cases: Where a mistake or imperfection is alleged; where the agreement is the fact in dispute; or to explain an ambiguity; or to establish illegality or fraud. The prohibition against oral testimony specified in the section applies as well to contracts to make wills as to other contracts. In the instant case no mistake or imperfection of the writing is put in issue. The validity of the agreement is not disputed; no ambiguity appears in the instrument; there is no allegation of fraud or undue influence.

Section 1625 of the Civil Code reads: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." The agreement executed between Charles L. Mulholland and the plaintiff in this action distinctly sets forth the consideration leading to the execution of the agreement, as follows:

"Whereas, unhappy differences have arisen and still continue to exist between said parties of the first and second part, in consequence of which they are unwilling to cohabit and live together as husband and wife, and said parties do not wish to resort to the courts for the determination of their marital differences: Now, therefore, said parties hereto, in view of said conditions, do hereby mutually agree and consent to an immediate separation, and said parties have mutually agreed and consented, and do hereby mutually agree and consent to alter their relations as to property, and in order more effectually to provide for their mutual maintenance, and the support and care of their said children, and in furtherance of this agreement, said parties have this day mutually executed separate conveyances, disposing of all of the community property acquired by said parties since their marriage, and now owned by them, and which is hereinafter specifically described."

Here follows a description of the property conveyed by the respective parties, each to the other, and also the property conveyed to the children, in which life estates were

reserved as heretofore specified, and after mentioning the purpose of such conveyance for the support and maintenance of the children, we find the following:

"Said party of the second part, in consideration of the premises, does hereby waive, release and relinquish all claims and demands of whatsoever nature or description in or to all or any of the herein described separate property of the party of the first part, and all claims and demands of whatsoever nature and character, in and to all of said property which said party may hereafter acquire, and to all earnings, profits and income of said party of the first part, and all rights of inheritance; provided, however, that said second party does not hereby waive any right of inheritance by reason of any future will which might be voluntarily made by said party of the first part, in favor of the said party of the second part."

A like provision in the agreement accords to the second party thereto the right to make a will devising property and retaining a corresponding privilege of inheritance.

It cannot very well be held that Charles L. Mulholland retained, and had the right under the agreement, to will any or all of his property to Elizabeth Mulholland, the second party in the agreement and, also, that a valid trust to convey the same property to other parties existed at the same time.

Following the oral declaration, if such declaration was made, the agreement, which negatived any limitation as to the power of either of the parties to devise their property by will, was signed. To hold that the oral declaration was admissible is to hold that the provisions of the agreement which we have set forth herein may be varied by oral testimony, in contravention of the sections of the code to which we have referred. Both conditions as to the devising of property cannot exist, and therefore the subsequent condition contained in the writing subsequently signed must be held as excluding any testimony of the so-called oral agreement.

We may here refer again to the recitals of consideration found in the agreement, and the causes which motivated the parties in signing the same. There is no question that the agreement contains, fully, a recital of the considerations. In *Arnold* v. *Arnold*, 137 Cal. 291 [70 Pac. 23], the subject of varying or adding or supplementing the express consideration by oral testimony is thus treated:

"While the recitals of consideration in written instruments are not conclusive as to the amount or character, or payment of the consideration, when these latter matters are the subject of litigation, evidence of want of consideration, or of a different consideration, is not admissible for the purpose of varying, contradicting and defeating covenants by which rights are expressly vested."

To the same effect we may cite the annotation found in 70 American Law Reports beginning on page 752. In the agreement under consideration all of the considerations moving the parties to sign the same are fully set forth and the oral declaration mentioned in the testimony cannot be admitted as an additional consideration without likewise varying the terms of the written instrument.

The instant case is readily distinguishable from the case of *Brison* v. *Brison,* 75 Cal. 525 [17 Pac. 689, 7 Am. St. Rep. 189], and a number of cases cited by respondent as supporting the rules which governed the decision in the Brison case. In that case we find that fraud constituted the basis of the action; that a declaration was made without any intent to perform. A number of cases involving the same question are cited, but these cases are not applicable here for the simple reason that no fraud or undue influence or mistake or ambiguity appears to be set forth in the record.

There are two factors determinative of this cause: first, that the oral testimony tends to controvert, limit and vary the express terms of the written agreement; second, that the record fails to show when the property willed to the defendant was acquired by Charles L. Mulholland.

In view of what we have said we see no reason for extending the length of this opinion by either citing or analyzing the various cases mentioned in the briefs.

The judgment is reversed with directions to the trial court to enter judgment in favor of the defendant.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 21, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1938.